Slip Op. 19-80

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TARGET GENERAL MERCHANDISE, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Richard W. Goldberg, Senior Judge <br> Consol. Court No. 14-00331 |

**OPINION**

[The court grants Target's motion for summary judgment and denies the Government's cross-motion.]

Dated: July 2, 2019

*Patrick D. Gill*, *Marilyn-Joy Cerny*, Sandler, Travis & Rosenberg, P.A., of New York, NY, for Plaintiff Target General Merchandise, Inc.  Of Counsel on the brief was *Michael V. Cerny*.

*Peter A. Mancuso*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant.  With him on the brief were *Amy M. Rubin*, Assistant Director, International Trade Field Office and *Joseph M. Hunt*, Assistant Attorney General.  Of Counsel on the brief was *Yelena Slepak*, Office of the Assistant Chief Counsel, International Trade Litigation for U.S. Customs and Border Protection.

Plaintiff Target General Merchandise, Inc. ("Target") has moved for summary judgment, Mot. for Summ. J., ECF No. 42 (Dec. 12, 2018), and the Government has responded with a cross-motion seeking the same, Def.'s Cross-Mot. for Summ. J., ECF No. 47 (Mar. 14, 2019). Upon importation, U.S. Customs and Border Protection ("Customs") classified the subject merchandise—stringed light sets—as "lighting sets of a kind used for Christmas trees" under the Harmonized Tariff Schedule of the United States ("HTSUS") (2012).  In support of Customs' classification, the Government relies solely on its contention that the articles at issue in this

litigation are commercially fungible with other light sets that the parties agree are Christmas tree lights. Mem. in Support of Def.'s Cross-Mot. for Summ. J., ECF No. 47 (Mar. 14, 2019) ("Gov't's Br."). Target asserts that Customs' classification is incorrect. Mem. in Support of Pl.'s Mot. for Summ. J., ECF No. 42 (Dec. 12, 2018) ("Pl.'s Br.").

An examination of the principal use of the subject articles as well as of their commercial fungibility with other products leads the court to conclude that Customs' classification is incorrect. Based on the parties' submissions and the court's examination of the submitted samples, there can be no genuine issue of material fact that the lighting sets at issue are not principally used as Christmas tree lights and are not fungible with Christmas tree lights. Accordingly, the court grants Target's motion and denies the Government's cross-motion.

## BACKGROUND

The subject merchandise entered the United States in 2012. Am. Summons, ECF No. 7 (Dec. 12, 2014). Upon entry, Customs classified the articles and Target timely filed its protests, which were subsequently denied. *Id.* Thereafter, Target filed a complaint, initiating this action. Compl., ECF No. 20 (Jan. 12, 2017) ("Compl."). The parties agree that the subject merchandise is classifiable under heading 9405 of the HTSUS but disagree on the appropriate subheading. Customs determined that the electric lighting sets at issue were to be classified under subheading 9405.30.0010 at 8.00% *ad valorem*. Am. Summons, ECF No. 7 (Dec. 12, 2014). That subheading is for the classification of:

| Heading/Subheading | Article Description |
|---|---|
| **9405** | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: |
| **9405.30** | Lighting sets of a kind used for Christmas trees |
| **9405.30.0010** | Miniature series wired sets. |

HTSUS § XX, Ch. 94, heading 9405, subheading 30 ("subheading 9405.30.0010").  Target now argues that the subject merchandise is more appropriately classified under subheading 9405.40.8000 of the HTSUS, which reads:

| Heading/Subheading | Article Description |
|---|---|
| 9405 | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: |
| 9405.40 | Other electric lamps and lighting fittings: |
| 9405.40.8000 | Other. |

HTSUS § XX, Ch. 94, heading 9405, subheading 40 ("subheading 9405.40.8000").  Subheading 9405.40.8000 carries with it a 3.9% *ad valorem* duty rate.

## UNDISPUTED MATERIAL FACTS

The stringed light sets at issue come in two basic varieties: those with a black cord ("black-corded light sets") and those with a white cord ("white-corded light sets").  Four samples were provided to the court, three of which are black-corded light sets.  LED Light Samples Exs. E & F, ECF No. 31 (Apr. 5, 2017) ("Physical Exs.").  The black-corded samples contain a black cord and multiple combinations of three differently-colored light bulbs while the white-corded sample has a white cord and a single combination of seven bulb colors.  *Id.*

The black-corded light sets "have black wire harnesses and contain green, purple, or orange bulbs, and combinations thereof."  Compl. ¶ 10; *see also* Physical Ex. E.  Of the black-corded light samples provided to the court, one set's bulbs were both green and purple; another had three different colored bulbs (green, purple, and orange); and the last had only purple bulbs.  Physical Ex. E.  The packaging of the black-corded light sets labels the goods as "MINI LIGHTS" and also highlights the color of the bulbs, the articles' capacity for use indoors and outdoors, the ability of the consumer to connect the light sets "end to end," as well as the color

and length of the cord.  *Id.*  The packaging further contains an image of the articles themselves displayed with pumpkins, candy, and witches' hats as well as repeated references to objects such as a "witch's cauldron" and a "graveyard[]."  *Id.*  Target employee Brian Borg—formerly a Merchandise Planner in Target's Halloween and Christmas business from July 2017 to August 2018—indicated that the black-corded light sets are put out for sale at the beginning of the Halloween season, near the end of August, and then after Halloween, "any unsold black corded lights [] remain on the shelves as a clearance item for ten days after which they are removed from the shelves."  Aff. of Brian Borg ¶¶ 35–36, ECF No. 42-1 (Nov. 14, 2018) ("Borg Aff.").

The white-corded light sets have white harnesses and a combination of seven different colored bulbs (red, yellow, blue, purple, amber, light blue, and green).  Physical Ex. F.  Those sets are labeled as "100 MULTI MINI LIGHTS."  *Id.*  Additionally, the front of the packaging highlights the following features: the consumer's ability to "[c]onnect up to 10 sets (1,000 bulbs) end to end," a "Limited 3 Year Guarantee," the bulb color variety, the length and color of the cord, the articles' capacity for use indoors and outdoors, and the energy-saving benefits of the light sets.  *Id.*  The image accompanying the front of the packaging shows a close-up of seven white harnesses with each of the seven different bulb colors.  *Id.*  The back of the packaging contains information on the products' specifications, warnings, energy usage information, and the terms of the "guarantee" advertised on the front of the box.  *Id.*  The white-corded light sets are sold year-round, Dep. of Brian Borg 192:24–25, ECF No. 42-2 (May 17, 2018) ("Borg Dep."), and during the Christmas season the lights are often sold in Target's "Trim A Tree" department, *see* Pl.'s Br. at 16, which "carries all types of Christmas products," Pl.'s Statement of Undisputed Material Facts ¶ 29, ECF No. 42 (Dec. 12, 2018).

During discovery, Target also provided the Government with two sample light sets representing the kind of light sets appropriately designated for use on Christmas trees. Pl.'s Resp. to Def.'s First Requests for Prod. ¶ 17, ECF No. 47-5 (Nov. 30, 2017). The samples both have green cords; one has only white bulbs and the other red, white, and green bulbs; and both are designed for indoor and outdoor use and can also connect end to end. *Id.* Exs. H & G. These samples too have been provided to the court. *Id.* The parties agree that these "green-corded light sets" are of a kind used for Christmas trees and are, therefore, properly classified under subheading 9405.30.0010. *See* Def.'s Statement of Undisputed Material Facts ¶ 6, ECF No. 47-1 (Mar. 14, 2019); Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 6, ECF No. 50-1 (Apr. 4, 2019).

## JURISDICTION AND STANDARD OF REVIEW

The court possesses jurisdiction to hear this dispute pursuant to 28 U.S.C. § 1581(a). The court reviews the denial of protest claims arising under 19 U.S.C. § 1515 *de novo*, and "shall make its determinations upon the basis of the record made before [it]." 28 U.S.C. § 2640(a)(1). Summary judgment will lie where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). In § 1581(a) classification cases, summary judgment will be warranted only if "there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb, Inc. v. United States*, 148 F. 3d 1363, 1365 (Fed. Cir. 1998). A factual disagreement as to the principal use of the subject merchandise is not a material fact precluding summary judgment. *Dependable Packaging Sols., Inc. v. United States*, Slip Op. 13-23, 2013 WL 646328, at *2 (CIT Feb. 20, 2013) (citing, *inter alia*, *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012)).

The court begins with the plaintiff's burden to show Customs' classification to be incorrect. *Jarvis Clark Co. v. United States*, 733 F.2d 873, 876 (Fed. Cir. 1984). "Specifically, the importer must produce evidence . . . that demonstrates by a preponderance . . . that Customs' classification decision is incorrect." *Universal Elecs., Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997). That evidence must be of a "sufficient quantity," *id.*; that is, sufficient to persuade the court that the contested tariff provision is incorrect, *Jarvis Clark*, 733 F.2d at 876.

If a plaintiff satisfies its burden, the court has an independent duty to arrive at "the *correct* result, by whatever procedure is best suited to the case at hand." *Id.* at 878. That procedure typically involves a two-part inquiry in which the court first addresses the legal question of the meaning of the relevant tariff provisions and then determines the factual issue of whether the merchandise falls within the disputed headings and subheadings. *Universal Elecs.*, 112 F.3d at 491.

## DISCUSSION

At issue in this case is the classification of the black- and white-corded light sets, which Customs classified as "[l]ighting sets of a kind used for Christmas trees." Subheading 9405.30.0010. The goods themselves serve as potent witnesses and the samples provided to the court establish that the principal use of the subject merchandise is not for use on Christmas trees. Rather, there is no dispute of material fact that the subject articles are multi-colored, indoor/outdoor light sets designed principally for use as Halloween lights and as general decorations. Further, the record establishes that the subject merchandise is not commercially fungible with Christmas tree lights. There is nothing about the goods themselves that demonstrates design or importation for use as Christmas tree lights. Accordingly, Target has met its burden to show Customs' classification to be incorrect. The court, therefore, grants Target's

motion for summary judgment as the subject merchandise is classifiable under subheading 9405.40.8000.

Classification cases require application, in numerical order, of the General Rules of Interpretation ("GRI") and the Additional Rules of Interpretation ("ARI")[1] established in the HTSUS.  *BASF Corp. v. United States*, 482 F.3d 1324, 1325–26 (Fed. Cir. 2007).  "The HTSUS is a hierarchical classification system which requires application of the most specific descriptive category in determining the applicable duty."  *Id.* at 1326.  The court, then, begins with GRI 1, which requires that tariff classification, in the first instance, "be determined according to the terms of the headings and any relative section or chapter notes . . . ."  GRI 1, HTSUS.  The parties agree—and the court concurs—that heading 9405 properly classifies the subject articles as "[l]amps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included . . . ."  HTSUS § XX, Ch. 94, heading 9405.

"Once imported merchandise is determined to be classifiable under a particular heading, a court must look to the subheadings to find the correct classification of the merchandise in question."  *Victoria's Secret Direct, LLC v. United States*, 37 CIT __, __, 908 F. Supp. 2d 1332, 1338 (2013).  Thus, the court moves to the subheadings of heading 9405 in search of the proper subheading, "determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable."  GRI 6, HTSUS.  The court first examines subheading

---

[1] Only certain instances will require application of the ARIs, "which distinguish the treatment of articles based on whether tariff classifications are controlled by principal or actual use."  *GRK Can., Ltd. v. United States*, 761 F.3d 1354, 1359 n.2 (Fed. Cir. 2014).

9405.30.0010, which operates as a "principal use" provision. *Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1364 (Fed. Cir. 1999) ("*Primal Lite II*"). "'Principal use' in this context [is] defined as the use 'which exceeds any other *single* use'" and the court therefore employs ARI 1(a). *Aromont*, 671 F.3d at 1312. That rule of interpretation requires a determination "in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use." ARI 1(a), HTSUS. That analysis, thus, entails not only a preliminary determination as to the principal use of the subject articles but also an additional determination "as to the group of goods that are commercially fungible with the imported goods." *Aromont*, 671 F.3d at 1312.

As a result, the court examines the undisputed evidence on the record as to the principal use of the subject merchandise as well as the commercial fungibility of the articles with lights used on Christmas trees. As there can be no genuine dispute of material fact as to either the principal use or commercial fungibility of the subject merchandise, that examination reveals that the subject articles were improperly classified under subheading 9405.30.0010. Accordingly, the court grants Target's motion for summary judgment and denies the Government's cross-motion.

## I. Principal Use

Looking first to Customs' classification, subheading 9405.30.0010, Target has satisfied its burden to show that subheading to be incorrect for both the black- and white-corded light sets. That subheading is for the classification of "[l]ighting sets of a kind used for Christmas trees." Subheading 9405.30.0010. The plain language of that provision applies only to lights used on Christmas trees and the court therefore examines the record evidence for support of the subject merchandise's principal use as Christmas tree lights. Only if a good satisfies the following

requirements will it be classifiable under that provision: 1) the good is a "lighting set," including those goods that are part of the "general class of lights on strings," and 2) the principal use of the lighting sets is for use on Christmas trees, not "lighting sets used for other purposes," such as a general decoration or source of illumination. *See Primal Lite, Inc. v. United States*, 22 CIT 697, 700, 15 F. Supp. 2d 915, 918 (1998) ("*Primal Lite I*"), *aff'd*, 182 F.3d 1362. Because there is no genuine dispute that the black-corded light sets are principally used as Halloween lights and the white corded-light sets are principally used as general decorations—of which white Christmas tree decoration is a small part—Customs' classification is incorrect.

"The purpose of 'principal use' provisions in the HTSUS is to classify particular merchandise according to the ordinary use of such merchandise, even though particular imported goods may be put to some atypical use." *Primal Lite II*, 182 F.3d at 1364. To ascertain the ordinary, principal use of the goods, the court follows the "well established" method of conducting "an examination of the imported article itself, in the condition in which it is imported.'" *United States v. Citroen*, 223 U.S. 407, 414–15 (1912), *cited with approval in Simond Am. Corp. v. United States*, 872 F.2d 1572, 1577 (Fed. Cir. 1989). "[T]he merchandise itself is often a potent witness in classification cases." *Simond*, 872 F.2d at 1578. In this instance, after examination of the samples provided to the court, the merchandise itself reveals that: 1) the black-corded light sets are principally used as Halloween decorations and 2) the white-corded light sets are principally used for general decorative purposes. Neither subject article finds principal use on Christmas trees and the packaging provides no evidence that the goods were designed for such a use.

First, the undisputed facts establish that the black-corded light sets are principally used as Halloween decorations as these articles are designed and advertised for their compatibility with

Case 1:14-cv-00335-RWG   Document 16   Filed 07/02/19   Page 10 of 19

Consol. Court No. 14-00331                                                                                         Page 10

the Halloween holiday.  It is uncontroverted in the record that the black cord would "clash with the green foliage of a Christmas tree."  Borg Aff. ¶ 11.  Just as the green-corded light sets are designed so as to blend with the green of a Christmas tree, Borg Dep. at 100:9–14, the black-corded light sets are designed to be affixed upon a dark background.  That much is confirmed by the packaging, which depicts the black-corded light sets as decoration for a black witch's hat, a black Halloween candy bowl, and a dark chest filled with pumpkins.  *See* Physical Ex. E.  That packaging supports the good's principal use as Halloween lights as it not only contains the above-described pictures of the goods displayed with Halloween-themed objects but also advertises use of the articles alongside a "graveyard" or "witch's cauldron."  Physical Ex. E.  Such advertising messages provide further confirmation as to the principal use of the black-corded light sets as Halloween decorations.

     Next, there is no genuine dispute of material fact that the white-corded light sets are principally used for general decorative purposes.  The cord color is such that the white cord would be "in glaring contrast" to the green found on most Christmas trees.  Borg Aff. ¶ 13.  Further, the items are sold year-round, "especially during back to college [season]. . . . [as] [t]hey are often used in dorm rooms as another inexpensive usage for the light."  Borg Dep. at 192:19–193:2.  While the white-corded light sets are sold during the Christmas season in Target's Christmas department, called "Trim a Tree," Pl.'s Statement of Undisputed Material Facts ¶ 29, ECF No. 42 (Dec. 12, 2018), that is indicative of only one of the many uses for which these general decorations are designed.  And last, the packaging in which the white-corded lights are found makes no mention of the Christmas holiday.  Rather, the goods are advertised merely for general use as white-corded "MULTI MINI LIGHTS" with multi-colored bulbs that have the capacity to connect end-to-end.  Physical Ex. F.

The Government attempts to establish principal use of the white-corded light sets by reference to their potential use on white Christmas trees.[2]  *See* Dep. of Claudia Garver Dep. 26:12–16, ECF No. 47-33 (June 21, 2018) ("Garver Dep."). But that assertion only goes so far as to establish a potential use on white Christmas trees, a small subset of all Christmas trees. The susceptibility of any article to an alternative use does not establish its principal use. *See Primal Lite II*, 182 F.3d at 1364. This represents merely one use among many for which these general decorations are designed and imported.

Ultimately, the entire premise of the Government's briefing before the court highlights the futility of its argument surrounding principal use. Rather than affirmatively asserting that Customs' classification was proper due to the articles' principal use, the Government relies exclusively on the notion that the goods are commercially fungible with the green-corded light sets that are principally used as Christmas tree lights. Such an argument avoids the main crux of this dispute: the ordinary and principal use of the articles themselves. After all, the Government's preferred heading is itself a principal use provision. And all the evidence in the record establishes principal use not as Christmas tree lights, but rather as Halloween decorations and general decorations. As a result, Target has met its burden to prove Customs' classification to be incorrect.

---

[2] Even that argument cannibalizes itself as it supports Target's view that the use of light sets on Christmas trees is largely dependent on the cord color matching the tree. By the Government's own admission, cord color is a potentially crucial distinguishing factor among different varieties of light sets. Here, the subject articles may be susceptible to placement on Christmas trees in certain limited situations, but this mere possibility does not establish that the subject articles are principally "used for Christmas trees."

**II. Commercial Fungibility**

There also is no genuine dispute as to the commercial fungibility of the subject merchandise with the green-corded light sets the parties agree are "of a kind used for Christmas trees." The evidence fails to establish that the subject merchandise is fungible and so the Government cannot demonstrate that Customs' classification was appropriate on this basis. Accordingly, this analysis too fails to establish that the subject merchandise was properly classified as Christmas tree lights.

In order to determine if a good is commercially fungible with other goods, the court considers several factors, including:

> [U]se in the same manner as merchandise which defines the class; the general physical characteristics of the merchandise; the economic practicality of so using the import; the expectation of the ultimate purchasers; the channels of trade in which the merchandise moves; the environment of the sale, such as accompanying accessories and the manner in which the merchandise is advertised and displayed; and the recognition in the trade of this use.

*Aromont*, 671 F.3d at 1313 (citing *United States v. Carborundum Co.*, 63 C.C.P.A. 98, 102, 536 F.2d 373, 377 (1976)). These are best known as the "*Carborundum* factors." When applying the *Carborundum* factors, the court relies on those circumstances that are "pertinent" to the classification of the subject articles. *See Carborundum*, 63 C.C.P.A. at 102, 536 F.2d at 377; *see also BASF Corp. v. United States*, 30 CIT 227, 248 n.20, 427 F. Supp. 2d 1200, 1219 n.20 (2006). Here, the pertinent *Carborundum* factors[3] establish that the black- and white-corded light sets differ in material respects to the green-corded light sets such that the subject merchandise is not commercially fungible with goods principally used on Christmas trees.

---

[3] Those pertinent factors include actual use, physical differences, consumer expectations, and environment of sale. Notwithstanding, application of all *Carborundum* factors would lead to the same result. None of the remaining factors would change the court's analysis as each is insufficiently probative as to commercial fungibility or principal use.

The Government asserts that the subject merchandise is commercially fungible with the green-corded light sets.  "Fungible," however, means "[c]ommercially interchangeable with other property of the same kind."  *Fungible*, BLACK'S LAW DICTIONARY (11th ed. 2019).  It does not mean the degree to which an article may be susceptible, capable, or adaptable to the uses of another good that falls within a desired tariff provision.  *See Carborundum*, 63 C.C.P.A. at 102, 536 F.2d at 377.  As a result, in order for the Government to prevail on its commercial fungibility argument, it must show that the subject merchandise is commercially interchangeable with the green-corded light sets.

The Government's attempt to satisfy the commercial fungibility inquiry takes a strained view of the purposes for which ARI 1(a) incorporates that test.  Commercial fungibility seeks to clarify a good's principal use, not pervert it.  *See Primal Lite II*, 182 F.3d at 1364 ("What the [G]overnment in effect urges is that the 'class or kind' of good referred to in ARI 1(a) comprises not the particular species of which the merchandise is a member, but a much broader genus to which that species belongs—in this case, the genus of all electric garlands, rather than the species consisting of those garlands principally used for decorating Christmas trees.").  Rather than utilizing the *Carborundum* factors to demonstrate the principal use of the subject merchandise, the Government attempts to lure the court into declaring the articles to be something that they are not.

Regardless, the *Carborundum* factors ultimately do not support the Government's view as the undisputed material facts are insufficient to establish either principal use of the subject articles themselves as Christmas tree lights or commercial fungibility of the goods with the green-corded light sets.

### A. Black-Corded Light Sets

An examination of the pertinent *Carboundum* factors reveals that the black-corded light sets are not commercially fungible with the green-corded light sets. The record evidence demonstrates that neither the actual use, physical differences, consumer expectations, nor environment of sale establish commercial fungibility. Accordingly, this part of the principal use analysis also is not supportive of classification under subheading 9405.30.0010.

First, the court considers the actual use of the black-corded light sets, "perhaps one of the more important of the *Carborundum* factors." *Aromont*, 671 F.3d at 1313. The deposition testimony of Brian Borg demonstrates that color of the cord is such that the black-corded light sets are used as Halloween decorations, Borg Dep. at 97:16–98:19, a fact uncontested by the Government.[4] And where there exists only one piece of evidence in the record as to a material fact, no genuine dispute exists. The court, then, is left only to view the uncontroverted evidence of actual use of the black-corded light sets as Halloween decorations.

Next, as to the general physical characteristics of the articles, the court relies on samples provided to the court, Physical Exs. E & F, which reveal no disputes of material fact. The Government asserts that the subject merchandise is the same as the green-corded light sets "but for the cord color . . . ." Gov't's Br. at 12–13. That much may be true. But the Government discounts that the cord color itself marks a substantial difference that renders the subject

---

[4] The Government responds merely by arguing that Borg's testimony is insufficient to establish actual use as it is unsupported by "objective evidence." Gov't's Br. at 20. In so doing, the Government has failed to present *any* evidence and, thus, can do no better than ask the court to discredit Borg's testimony. The court sees no reason to do so; Borg's extensive experience makes his testimony invaluable and the Government's silence as to actual use speaks volumes. Moreover, even if the court were to reject Borg's testimony, at the summary judgment stage, "discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986) (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984)).

merchandise not of a variety used on Christmas trees.  With regard to a decorative goods' utility, color may be a determinative factor.[5]  As Target argues—and as Borg indicated—the black-corded light sets contain cords of a color which would clash with "the green foliage of a Christmas tree." Pl.'s Br. at 13.  That is to say that the differentiating characteristic the Government has identified—cord color—is a crucial one.  Accordingly, the difference in cord color renders the subject merchandise not fungible with the green-corded light sets.

The court next considers the expectations of ultimate purchasers—that is, retail consumers, *Dependable Packaging*, 2013 WL 646328, at *6 n.13.  The court relies on all relevant evidence probative of consumers' expectations, including how the articles are advertised and marketed.  *Aromont*, 671 F.3d at 1315.  Here, the undisputed advertising evidence establishes that consumers would not expect the black-corded light sets to be used on Christmas trees.  Generally, the black-corded light sets are advertised almost exclusively in relation to their compatibility with the Halloween holiday.  The packaging itself demonstrates principal use as a Halloween decoration as it both contains photographs of the light sets themselves displayed with pumpkins, candy, and witches' hats as well as consistent references to Halloween-themed objects such as a "witch's cauldron" and a "graveyard[]." Physical Ex. E.  The Government has failed to raise a genuine dispute as to consumer expectations and the evidence does not support the view that the black-corded lights are expected to be used on Christmas trees.

Last, the court notes that the environment of sale does not support commercial fungibility with the green-corded light sets.  The environment of sale includes "accessories that accompany

---

[5] That is particularly true where the color of an article is designed so as to resemble an item of a similar color. *See United States v. Moore Int'l, Inc.*, 56 C.C.P.A. 11, 14, 402 F.2d 482, 484–85 (1968) (color of carved articles gave appearance of wrought iron rather than fruit); *United States v. Inter-Maritime Forwarding Co.*, 41 C.C.P.A. 107, 111, 1953 WL 6121, at *3–4 (1953) (color of rubber mats made them stand out such that they were not classified as floor coverings).

the merchandise and the manner in which the merchandise is displayed." *Aromont*, 671 F.3d at 1315. Not only are the black-corded light sets only on display at retail stores during the Halloween season, Borg Aff. ¶¶ 35–36, they are packaged in a manner representative of Halloween items, Physical Ex. E.[6] Accordingly, the environment of sale also does not support commercial fungibility with the green-corded light sets.

Ultimately, the undisputed material facts show that the black-corded light sets are not commercially fungible with the green-corded light sets. The only evidence in the record probative of actual use and consumer expectations demonstrates that the black-corded light sets more appropriately viewed as Halloween decorations. Further, the general physical characteristics of the subject merchandise are materially different than that of the green-corded light sets. And last, the environment of sale points only to principal use as a Halloween decoration. There then remains no genuine dispute of material fact and the Government cannot support its argument surrounding commercial fungibility. Accordingly, the black-corded light sets are not commercially fungible with light sets of a kind used on Christmas trees and therefore are not classifiable under subheading 9405.30.0010.

### B. The White-Corded Light Sets

The record evidence further contains no genuine dispute of material fact as to the white-corded light sets and demonstrates that they, much like the black-corded light sets, are not

---

[6] For its part, the Government cites to a single piece of evidence related to the samples provided to the court: that the instructions inside the packaging mention using the black-corded light sets "on a live tree," Gov't's Br. Ex. 11. Environment of sale contemplates the appearance to a potential purchaser of the product. *See Aromont*, 671 F.3d at 1315. The instructions, therefore, are irrelevant in the context of the subject merchandise's environment of sale as they are found within the packaging and are not even available to consumers until the articles have been purchased and the box opened. As a result, the Government fails to present evidence sufficient to create a genuine dispute of material fact as to the environment of sale.

commercially fungible with the green-corded light sets.  The court applies the *Carborundum* factors to the white-corded light sets in the same analytical manner as employed above, in light of the undisputed material facts on the record, noting only those material differences in the analysis.  Specifically, the physical characteristics, actual use, consumer expectations, and environment of sale again all establish that the merchandise is not commercially fungible with the green-corded light sets and therefore not classifiable under subheading 9405.40.8000.

As with the above, the sole differentiating physical characteristic between the white- and green-corded light sets is the cord color, "which would be in glaring contrast to the green foliage of Christmas trees," Borg Aff. ¶ 13.  This, as before, is a crucial difference demonstrating the products are not interchangeable.

As to actual use, the undisputed record evidence establishes that there are multiple uses for the white-corded light sets: as holiday décor to be placed upon a white background, *id.* ¶ 24; as "outdoor décor on snow," *id.* ¶ 25; as "inexpensive" alternate light decorations in college dormitories, Borg Dep. at 192:19–193:2; and as decorations for white Christmas trees, *see* Garver Dep. at 26:12–16.  These multiple uses support the principal use of the white-corded light sets as a general decoration.  Further, the record demonstrates that white trees account for approximately one percent of Target's Christmas tree sales, *see* Borg Aff. ¶ 32, such that use on Christmas trees represents only a small fraction of the identified uses.  As a result, this factor is not supportive of commercial fungibility with the green-corded light sets.

Further, the Government can cite to no advertising messages related to the white-corded samples provided to the court to support its contention surrounding commercial fungibility.  The packaging itself contains no mention of the Christmas holiday.  Physical Ex. F.  As a result, this factor does not support commercial fungibility of the white-corded light sets.

As to the environment of sale of the white-corded light sets, the Government notes that the "products are sold during the same time of year in [Target's] retail store, on the same shelves, and in close proximity to Christmas trees." Gov't's Br. at 19; *see also id.* Ex. 20.  Additionally, the white-corded light sets are sold during the Christmas season at Target's "Trim a Tree" department, which "carries all types of Christmas products including lights, trees, wreaths, garlands, ornaments, stockings, wrap, gift bags, gift tags, tissue and holiday décor." Pl.'s Statement of Undisputed Material Facts ¶ 29, ECF No. 42 (Dec. 12, 2018).  But there is also evidence that the articles are sold "on the [web] site all year-round" and "especially during back to college [season]." Borg Dep. at 192:24–25.  This evidence does not support fungibility with lights used on Christmas trees, but rather furthers the notion that these light sets are designed for general decorative use, of which lighting of *white* Christmas trees remains a subset.

The undisputed material facts on the record do not support the Government's view that the white-corded light sets are commercially fungible with the green-corded light sets.  First, the physical differences between the two light sets demonstrate that they are not interchangeable. That cord color, likewise, shows that use on white Christmas trees makes up an insignificant portion of the white-corded light sets' designed uses as a general decoration.  Further, the consumer expectations evidence contains no advertising evidence suggesting commercial fungibility with the green-corded light sets.  And last, the final factor—the environment of sale— further establishes that the white-corded light sets are not commercially fungible with light sets used on Christmas trees.  Therefore, the evidence establishes that the white-corded light sets are not classifiable under subheading 9405.30.0010.

**III. Subheading 9405.40.8000**

Having determined that the Government's proffered subheading is incorrect, the sole remaining question is the determination of the appropriate subheading under heading 9405. The court, then, turns to the applicability of subheading 9405.40.8000. This subheading operates as an *eo nomine* provision covering "[o]ther electric lamps and lighting fittings . . . ." Subheading 9405.40.8000. Such provisions "with no terms of limitation, will ordinarily include all forms of the named article." *GRK Can.*, 761 F.3d at 1358. So long as evidence in the record establishes that the black-corded lights are inclusive in this subheading, the black-corded lights will be classified thereunder. *See Primal Lite I*, 22 CIT at 700, 15 F. Supp. 2d at 918. Utilizing GRI 6, the court concludes that the subject articles qualify as "electric lamps and lighting fittings." Subheading 9405.40.8000. Having eliminated the applicability of subheading 9405.30.0000, there is no other more appropriate subheading within Chapter 94 of the HTSUS. Accordingly, the black-corded light sets are properly classified under subheading 9405.40.8000.

**CONCLUSION**

Because there is no dispute of material fact and Target has satisfied its burden of showing Customs' classification to be incorrect, the court denies the Government's cross-motion for summary judgment. An independent examination of the goods establishes the articles' respective principal uses as Halloween lights and general decorations. Further, the undisputed material facts demonstrate that the goods are not commercially fungible with the green-corded light sets. As a result, the subject articles are classifiable under subheading 9405.40.8000, and the court grants Target's motion for summary judgment.

Dated: July 2, 2019                                                                                        /s/ Richard W. Goldberg
New York, New York                                                                                   Richard W. Goldberg
                                                                                                                       Senior Judge